KNOLL, Judge.
Wilson H. Martin (hereafter Martin) appeals a jury verdict dismissing his claim for damages against Procter & Gamble Manufacturing Company (hereafter Procter & Gamble) for injuries he sustained at Procter & Gamble’s loading dock. The jury concluded that there was no liability attributable to Procter & Gamble, and also found its loading facility safe and not the cause of Martin’s injuries. Martin’s subsequent motion for judgment notwithstanding the verdict was denied.
Martin brings this appeal, contending the trial court committed manifest error by: (1) finding Procter & Gamble free from negligence; and, (2) finding Procter & Gamble’s loading facility safe and not the cause of the damages. We affirm, finding the jury verdict was not manifestly erroneous.
FACTS
On August 13, 1984, Martin, a tractor-trailer driver, was 28 years of age at the time of the accident which happened at Procter & Gamble’s loading dock in Pine-ville, Louisiana. He was a resident of Arnold, Missouri and employed by Dart Transit Company. Martin had driven trucks in various jobs since he graduated from high school and was very qualified in this capacity-
Martin went to Procter & Gamble to pick up and transport a cargo of detergent to San Antonio, Texas. This was the first time he had ever been to Procter & Gamble and was not familiar with the location of the loading dock or the actual loading procedures involved. After Martin parked his truck at the loading dock, the tires of the truck were chocked and he gave his keys to a Procter & Gamble employee to be locked away until loading was completed. On the floor of the loading dock were two painted lines, which designated a safety zone for truck drivers and pedestrians to stand behind so that they would not wander into the path of vehicles during loading operations.
At the time of the accident, Terry Dale Mitchell, an employee of Procter & Gamble, was loading Martin’s truck with a vehicle known as a clamp truck. This machine has two extended arms which compress cargo between them, enabling the clamp truck to pick up and carry cargo to an awaiting truck. Mitchell made five loads to Martin’s truck without incident. On the sixth load, *289 Mitchell lost sight of Martin as he made his final turn into the truck, heard a scream, and stopped the clamp truck. When Mitchell went to investigate, he found Martin pinned to the floor of the trailer by the clamp truck.
As a result of this accident, Martin sustained a fractured elbow. Martin underwent surgery to correct the fracture and was diagnosed as having ulnar nerve damage and a permanent residual impairment of twenty-five percent of his arm, with a fifteen percent impairment of his entire body.
MANIFEST ERROR
Martin first contends the jury committed manifest error in not finding Procter & Gamble liable for damages sustained by him as a result of his accident at it’s loading dock. We disagree.
In Arceneaux v. Domingue, 365 So.2d 1330 (1978), the Louisiana Supreme Court held that a reviewing court must give great weight to the conclusions of the trier of fact, and should not disturb reasonable evaluations of credibility and reasonable inferences of fact in the absence of manifest error. Therefore, in the present case we must determine whether or not the jury was manifestly erroneous in exonerating Procter & Gamble of liability.
The testimony given by Martin’s expert, Dennis Howard, basically concerned the unsafe loading procedures utilized by Procter & Gamble in their everyday operations and how their safety procedures could be improved. He observed a clamp truck, which was the type of machine involved in the accident, and said the clamping plates were burred, i.e., very rough and had jagged edges; he then conjectured that the burred clamping plates might have snagged Martin’s pants leg, injuring him as he was pulled to the floor. However, Mr. Howard did not examine the clamp truck that was being used at the time of the accident, but rather, a similar one. He admitted that no one told him there were burrs on the clamp truck involved in the accident and that he heard no evidence to the contrary.
Procter & Gamble’s expert, Jack Larks, testified that Procter & Gamble’s loading procedures met the accepted safety standards required in this industry and that its employee was driving the clamp truck in a proper manner. He further testified that based on Mitchell’s testimony, it was mathematically impossible for the clamp truck to have ventured into the area Martin was standing because the maximum turning radius of the clamp truck would have prevented it. Mr. Larks also established by mathematical calculation that even if Martin had been struck by the clamp truck, the truck would have collided with a yellow safety post, pinning Martin to this post. However, the record shows that Martin was in the trailer when Mitchell heard him scream, and the yellow safety post was never touched. Mr. Larks opined that based on the physical evidence, the facts, and the engineering aspects of this case, the only way Martin could have been hit was if he placed himself in the trailer in the direct path of the clamp truck.
Jerry Mathews, an employee of Procter & Gamble, testified that after the accident, Martin told him he stepped out a little too far when he was trying to look into the trailer and was struck by the clamp truck.
Martin testified that he remained behind the yellow safety line at all times, but the clamp truck came across the yellow line into the safety zone and struck him. On the other hand, Mitchell testified that he stayed in the proper path at all times, but did not see how Martin was hit because his vision was temporarily obstructed. There were no other eyewitnesses to the accident.
The jury heard all of the evidence presented in this case and determined Procter & Gamble was not liable. The finder of fact, be it judge or jury, should assess the credibility of the witnesses, expert or lay, to determine the most credible and realistic evidence; in reaching a conclusion, a finder of fact need not accept all the testimony of any witness as being true or false, and may believe and accept any part or parts of a witness’ testimony and refuse to accept any other part or parts thereof. Harrigan v. Freeman, 498 So.2d 58 (La.App. 1st Cir. *290 1986). We have carefully reviewed the record and, considering the conflicting lay and expert evidence, we can not say the jury committed manifest error when it absolved Procter & Gamble of liability.
Martin next contends that the jury was manifestly erroneous in finding Procter & Gamble’s loading facility safe and not a cause of the damages he sustained. We disagree.
The only testimony offered in support of Martin’s contention is that of his expert, Dennis Howard. Mr. Howard testified that a clamp truck should never be operated when vision is obstructed. He based this statement on recommendations made by Clark, the manufacturer of the clamp truck involved in the accident, and guidelines of the Occupational Safety and Health Act.
We do not dispute the safety guidelines Martin offered in support of his position. However, the evidence preponderates that Procter & Gamble took adequate safety precautions to alleviate hazards such as the temporary lack of vision of clamp truck drivers. The yellow lines were specifically drawn on the floor of the loading dock for drivers and pedestrians to stand behind in order to avoid being struck by working clamp trucks. Martin testified that he understood the purpose of these lines because he had seen this procedure used at other loading facilities. He further testified that this practice was a normally accepted procedure.
As far as Procter & Gamble’s implementation of high safety standards, it is undisputed that their employees undergo thorough training in safety procedures. Even after being trained to operate a clamp truck for several months, Mitchell was required to requalify on safety procedures at regular intervals, to participate in weekly safety meetings, and supervisory personnel reviewed him every six months on safety procedures.
Furthermore, Procter & Gamble provided written rules on safety procedures to all employees, and a copy of these rules was sent to all carriers that did business with Procter & Gamble. The pertinent parts of these rules state:
“Be aware and alert of pedestrians and other vehicles on the dock and other truckline employees attending his trailer.”
* * * * * *
“Non Procter & Gamble employees will not cross the yellow line on the truck dock to obtain product except when a Procter & Gamble employee is present.”
* * * * * *
“Be alert and aware of all moving equipment. Tractors have the right of way.”
* * * * * *
“Since it is not possible to cover every possible incident in rules such as these, common sense and good judgment should prevail where no set rules have been stated.”
We find that the record supports that the jury was not manifestly erroneous in its conclusion that Procter & Gamble’s loading facility was not dangerous to persons on or around it as long as rules of safety were followed. The only possible danger to Martin regarding Procter & Gamble’s loading facility was if he placed himself in the path of a moving clamp truck. Considering the physical remoteness of danger, the effort one had to make in order to encounter the danger, and the lack of any necessity for doing so, it can not be said that the facility and operation was a hazardous or dangerous instrumentality or that it posed an unreasonable risk of harm to persons who were in the vicinity of the facility. See Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979).
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to Martin.
AFFIRMED.